Kelly J. C. Gallinger
John R. Knisely
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128
kgallinger@brownfirm.com
jknisely@brownfirm.com

*Attorneys for Plaintiff James River Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JAMES RIVER INSURANCE COMPANY, ) ) ) | Cause No.: CV 23-52-H-KLD |
| Plaintiff, ) ) | |
| v. ) ) | **DECLARATORY COMPLAINT** |
| JAMES HALDEMAN ARMSTRONG, ) JR, ; W.M. and F.I., ) ) | |
| Defendants. ) ) | |

COMES NOW Plaintiff James River Insurance Company, (hereinafter "JRIC"), by and through its attorney of record, and for its Declaratory Complaint alleges as follows:

### PARTIES AND GENERAL ALLEGATIONS

1.      Plaintiff JRIC is a citizen of Ohio and is a wholly owned subsidiary of James River Group, Inc., a Delaware domiciled corporation.  JRIC is authorized to

transact business in the state of Montana.

2.      Defendant James Haldeman Armstrong, Jr. ("Armstrong") is a citizen of Montana.

3.      Defendant W.M. ("W.M.") is a citizen of Montana. In light of the sensitive and highly personal nature of the subject matter of this case, which pertains to allegations of sexual assault and sexual misconduct, as per the mutual desire of opposing counsel, the use of a pseudonym for W.M. is appropriate and necessary to protect her privacy. The true identity of W.M. is known by all parties to this action and their respective counsel and will be confidentially provided to the Court upon request.

4.      Defendant F.I. ("F.I") is a citizen of Montana.  In light of the sensitive and highly personal nature of the subject matter of this case, which pertains to allegations of sexual assault and sexual misconduct, as per the mutual desire of opposing counsel, the use of a pseudonym for F.I. is appropriate and necessary to protect her privacy. The true identity of F.I. is known by all parties to this action and their respective counsel and will be confidentially provided to the Court upon request.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1331.

6.      Upon information and belief, the amount in controversy exceeds $75,000.

7.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332.

8.    On or about May 25, 2023, Defendants W.M. and F.I. filed a First Amended Complaint and Demand for Jury Trial in an action styled: *W.M. and F.I. v. James Haldeman Armstrong, Jr. ; Riverwood Health Montana, LLC ; John Does I-V*; CDV-2022-0893, Montana First Judicial District Court, Lewis & Clark County, Montana.  (hereinafter, the "Underlying Complaint," attached hereto as Exhibit "A").

9.    The Underlying Complaint alleges that in 2008, the states of Arizona and Montana suspended Armstrong's respective medical licenses for engaging in sexually inappropriate behavior towards patients. Further, the Underlying Complaint alleges that according to public records, Armstrong's misbehavior included exposing his penis, touching a patient inappropriately, asking patients unnecessarily detailed questions about their sexual histories and deriving pleasure from doing so.

10.    The Underlying Complaint alleges that in 2011, the Montana Board of Medical Examiners provisionally restored Armstrong's medical license and, in 2013, issued Armstrong an "unrestricted license to practice medicine in Montana."

11.    The Underlying Complaint alleges that despite his history of sexual impropriety with patients which resulted in the previous suspension of his medical

licenses in Arizona and Montana, Riverwood Health Montana, LLC, employed Armstrong to see patients at its clinic.

12.    The underlying Complaint alleges that on or about October 28, 2020, F.I. was referred to Armstrong at Riverwood Health Montana because her therapist recommended she obtain a prescription for anti-depressants.

13.    The Underlying Complaint alleges that during F.I.'s initial consult with Armstrong on October 28, 2020, he did not talk to F.I. about her depression or anxiety, but instead asked her a series of questions about her sexual history, her sex life, how high her sex drive was, and whether she had ever been raped.

14.    The Underlying Complaint alleges that despite taking an invasive sexual history of F.I., Armstrong failed to chart or note any of F.I.'s answers in his written record of the October 28, 2020, office visit.

15.    The Underlying Complaint alleges Armstrong then "examined" F.I. during which he lifted her shirt, touched and felt her stomach with his ungloved hand, then lifted up her leggings and stared down her pants at her vaginal area. The Underlying Complaint alleges Armstrong derived pleasure from these actions.

16.    The Underlying Complaint alleges that Armstrong failed to chart or document his "examination" of F.I., which did not include listening to her heart, looking in her throat or listening to her breathing—just looking up her shirt, staring down her pants and rubbing her stomach.

17.    The Underlying Complaint alleges that during F.I.'s second appointment with Armstrong on December 1, 2020, Armstrong again asked F.I. questions about her sexual life and sexual history and ultimately advised her to "enjoy lots of sex with her husband" as a way of avoiding weight gain secondary to her use of the anti-depressants.

18.    The Underlying Complaint alleges that despite taking a second invasive sexual history of F.I., Armstrong again failed to chart or note any of F.I.'s answers in his written record of the December 1, 2020, office visit.

19.    The Underlying Complaint alleges that Armstrong "examined" F.I. by looking up her shirt and pulling down the waistband of her leggings to look at her vaginal area and placing his ungloved hand under her clothing.   Armstrong allegedly appeared gratified by these actions taken towards F.I.

20.    The Underlying Complaint alleges that during each of Armstrong's "exams" of F.I., there was no other person present during the examination, such as a female nurse or female physician's assistant.

21.    The Underlying Complaint alleges on or about November 3, 2020, upon the referral and suggestion of her therapist, W.M. presented to Armstrong for mental health issues including a bipolar condition, and to reinstitute medications for her health conditions.

22.    The Underlying Complaint alleges that during an appointment on November 17, 2020, Armstrong asked W.M. if she was married or had a boyfriend, and further asked W.M about her sex life.

23.    The Underlying Complaint alleges that on December 10, 2020, Armstrong undertook a physical examination of W.M. and used a stethoscope on her back and front.  Allegedly, while examining W.M.'s back, Armstrong put his hands down the back of W.M.'s pants and rubbed his penis (through his pants) against her. The Underlying Complaint alleges Armstrong then examined W.M.'s abdomen while continuing to rub his penis against her.    The Underlying Complaint alleges that Armstrong then put his hand down W.M.'s pants, rubbed W.M.'s genital area, and then pulled W.M.'s waistband of her pants away from her waist and visually looked down her pants.

24.    The Underlying Complaint alleges that during Armstrong's examination of W.M., there was no other person present such as a female nurse or female physician's assistant, and that Armstrong failed to chart or document his questions to W.M. regarding her marital status, boyfriend status or sex life.

25.    The Underlying Complaint alleges that Armstrong failed to chart or document his "examination" of W.M. regarding any of the conduct relating to rubbing his penis against her, putting his hand down W.M.'s pants, rubbing W.M.'s genital area, or looking down W.M.'s pants on December 10, 2020.

26.    The Underlying Complaint alleges that during the physical examination of W.M. on December 10, 2020, Armstrong was ungloved and appeared to have derived sexual gratification during the conduct described above.

27.    The Underlying Complaint alleges that on or about April 1, 2021, the State of Montana charged Armstrong with sexual intercourse without consent and two counts of sexual assault related to his "examinations" of W.M. and F.I.

28.    The Underlying Complaint alleges that on or about May 19, 2022, Armstrong pleaded no contest to a felony charge of criminal endangerment.

29.    The Underlying Complaint alleges the following claims against Armstrong: 1) Sexual Battery; 2) Negligence/Negligence *Per Se*; 3) Deceit/Negligent Misrepresentation; 4) Negligent and Intentional Infliction of Emotional Distress.

30.    JRIC issued a Physicians, Surgeons and Dentists Professional Liability Policy to Armstrong for policy period August 7, 2020, through August 7, 2021, identified as Policy No. 00094371-1. ("the Policy") (See the Policy attached hereto as Exhibit "B").

31.    JRIC issued an Extended Reporting Period Endorsement to the Policy, extending the applicable reporting period from August 7, 2021, through August 7, 2023, identified as Policy No. 00094371-1 Extended Reporting Period

Endorsement. ("the Extended Reporting Endorsement") (See the Extended Reporting Endorsement attached hereto as Exhibit "C").

32.     Armstrong has tendered the defense and indemnification of the claims made against him in the Underlying Complaint to JRIC.  JRIC has agreed to defend Armstrong against the claims made in the Underlying Complaint pending coverage resolutions in this action.

## DECLARATORY RELIEF

33.     JRIC incorporates paragraphs 1 through 32 above into this Count.

34.     Currently there is a dispute between JRIC and Armstrong regarding their respective rights and duties as articulated in the Policy described above. F.I. and W.M. are parties in interest to this dispute as Plaintiffs in the Underlying Complaint. The foregoing dispute entitles JRIC to declaratory relief under Mont. Code Ann. 27-8-202, and 28 U.S.C. §§ 2201 and 2202.  These disputes include the following:

      a.    Whether JRIC has a duty to defend Armstrong in the Underlying Case;

      b.    Whether JRIC has a duty to indemnify Armstrong for any judgments or settlements made against him in the Underlying Case; and

      c.    For such other issues as may arise in this litigation.

## The Terms of the Policy

35.    Subject to the terms, conditions, limitations, and exclusions contained in the Policy, JRIC has an obligation to advance defense costs and provide indemnification for judgments or settlements for Armstrong under the Policy relating to liability claims.

36.    The Policy provides in pertinent part:

**PHYSICIANS, SURGEONS & DENTISTS**
**PROFESSIONAL LIABILITY POLICY**
**\*\*\***

**PROVISIONS**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the First Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII – DEFINITIONS.

In consideration of payment of the premium and in reliance upon your statements in the Application made a part hereof, and subject to all the terms and conditions of this Policy, we agree with you as follows:

**SECTION I - COVERAGES**

**1. Insuring Agreement**

a. We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" because of "injury" arising out of "professional services" rendered or that should have been rendered provided that:

  (1) The "damages" arise out of an act, error or omission in the conduct of the insured's "professional service(s)"; and

  (2) The "damages" arise out of a "professional service" that occurs subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy; and

  (3) The "claim" is first made against any insured subsequent to the Policy effective date and prior to the expiration of the Policy or consecutive renewal thereof or Extended Reporting Periods, if applicable; and

  (4) The "claim" is first reported in writing to us subsequent to the effective date and prior to the expiration date of the Policy or consecutive renewal thereof or Extended Reporting Periods, if applicable.

b. All "claims" for "damages" arising out of "professional services" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured and reported to us.

c. We will have the right and duty to defend the insured against any "claim" seeking those "damages". However, we will have no duty to defend the insured against any "claim" seeking "damages" for "professional services" to which this insurance does not apply.

We will select and retain defense counsel. Any counsel retained by any insured will be at the sole expense of the insured.

We shall not settle any "claim" or "suit" without the written consent of the Named Insured. If the Named Insured refuses to consent to a settlement recommended by us and acceptable to the claimant, then our Limit of Liability under this Policy with respect to such "claim" or "suit" shall be reduced to the amount of "damages" for which the "claim" or "suit" could have been settled plus all "claims expense" incurred up to the date

of such refusal. However, in no event shall this amount exceed the applicable Limits of Liability.

Consent of the Named Insured is not required and we may settle any "claim" or "suit" we deem advisable where such consent is contrary to state law or when the Named insured:
***

(4) has had his or her license to practice medicine suspended, surrendered or revoked;
***

   d.   We will pay "claims expense" with respect to any "claim" or "suit" against an insured. These payments will reduce the Limits of Liability.  (HC0002US 03-11; pgs. 1 & 2 of 7)

## 2. Exclusions

This Policy does not apply to any "claim":
***
e. Based on or directly or indirectly arising out of or resulting from any sexual act or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or harassment, including "claims" of improper or negligent hiring, employment or supervision, failure to protect or warn the other party, failure to prevent the sexual abuse and/or physical abuse, failure to prevent assault and battery and failure to discharge the employee;
***
h. Based on or directly or indirectly arising out of or resulting from the creation, alteration, or modification of any medical records not in accordance with medically accepted standards;
***
j. Based on or directly or indirectly arising out of or resulting from:

   (1) Any act committed with knowledge of its wrongful nature or with the intent to cause damage;
   ***
   (3) Any criminal, fraudulent, or dishonest act;
   ***
   However, we shall defend such allegations against the insured if it involves a "claim" otherwise covered under the Policy until final adjudication;

11

***

t. Based on or directly or indirectly arising out of any disciplinary proceeding before any state licensing board or hospital peer review, or other similar entity, or any obligation to pay any fines, penalties, or other costs assessed against the insured arising out of any disciplinary proceeding before any state licensing board or hospital peer review, or other similar entity;  (HC0002US 03-11; pgs. 2 & 3 of 7).

***

## SECTION VII – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

1. "Claim" means a written demand for monetary "damages" arising out of or resulting from the rendering or failure to render "professional services."

2. "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies. "Damages" does not include equitable or non-pecuniary relief, punitive damages or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

3. "Claims expense" means fees, costs or expenses we incur, resulting from the defense and appeal of a covered "claim" and include:

    a. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Liability.

    b. Costs taxed against the insured in a "suit".

    c. Prejudgment interest awarded against an insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any prejudgment interest based on that period of time after the offer.

    d. Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

4. "Professional services" means the furnishing of professional health care

12

services by the First Named Insured shown in the Declarations, or any other person or organization qualifying as a Named Insured under this Policy, including services by an individual Named Insured as a member of a formal accreditation or similar professional board or committee of a hospital at which the Named Insured is a staff member. It includes furnishing of food, beverages, medications or appliances in connection with those services.
**\*\*\***

7. "Suit" means a civil legal proceeding, including arbitrations brought against you seeking monetary "damages". It does not include criminal proceedings, proceedings seeking equitable relief (including without limitation, injunctions or specific performance) or proceedings brought by a governmental or regulatory entity including, without limitation, those seeking fines, penalties, taxes or suspension or revocation of license, registration, membership or other operating authority. (HC0002US 03-11; pg. 6 of 7)

**\*\*\***

## INCIDENT REPORTING ENDORSEMENT

This endorsement modifies insurance provided under the following:

PHYSICIANS, SURGEONS & DENTISTS PROFESSIONAL LIABILITY POLICY

**SECTION V – CONDITIONS**

2. Notice of "Claim" or "Suit" is amended to include:

> e. If during the "policy period" the insured first becomes aware of an incident which may give rise to a "claim" for which coverage is otherwise provided under this Policy and if the insured shall during the "policy period" or any Extended Reporting Period give written notice to the Company of:
>
> (1) The specific act, error or omission; and
> (2) The damage which has or may result from such act, error or omission; and
> (3) The circumstances by which the insured first became aware of such act, error or Omission then any "claim" that may subsequently be made against the insured arising out of such act, error or omission shall be deemed for the

13

purpose of this insurance to have been made during the "policy period" or Extended Reporting Period, if purchased.  (HC2210US 11-04).

***

## ENDORSEMENT – DEFINITION OF CLAIM

This endorsement modifies insurance provided under the following:
PHYSICIANS, SURGEONS & DENTISTS PROFESSIONAL LIABILITY POLICY
SECTION VII – DEFINITIONS, Item 1, is amended to read as follows:
"Claim" means a demand for monetary "damages" arising out of or resulting from the rendering or failure to render "professional services".  (HC2208US 07-04).

***

## COMBINED POLICY EXCLUSIONS

## DUTY TO DEFEND -EXCLUSION

Where there is no coverage under this policy, there is no duty to defend. (HC2200US 07-06; pg. 3 of 3).

37.    The Policy provides coverage for claims arising from "professional services" rendered or that should have been rendered.

38.    Section VII of the Policy defines "professional services" as the furnishing of professional health care services by the First Named Insured

shown in the Declarations, or any other person or organization qualifying as a

Named Insured under this Policy, including services by an individual Named

Insured as a member of a formal accreditation or similar professional board or

committee of a hospital at which the Named Insured is a staff member. It includes

furnishing of food, beverages, medications or appliances in connection with those

services.

14

39. The sexually exploitative physical "examinations" and the taking of unnecessary invasive sexual histories alleged in the Underlying Complaint do not constitute "professional services" as defined in Section VII of the Policy. Thus, the conditions necessary to trigger coverage under the Policy are not alleged in the Underlying Complaint and there is no coverage for the claims asserted against Armstrong.

40. The Sexual Battery claim asserted against Armstrong in the Underlying Complaint is directly excluded from coverage under exclusion e outlined in the Policy as the claims for sexual battery are based on or directly or indirectly arising out of or resulting from a sexual act or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or harassment.

41. The Sexual Battery claim asserted against Armstrong in the Underlying Complaint is further excluded from coverage under exclusion j outlined in the Policy as the sexual battery claims were committed by Armstrong with his knowledge of the wrongful nature or the acts and because the acts are criminal in nature or dishonest.

42. The Negligence/Negligence *Per Se* claim asserted against Armstrong in the Underlying Suit is excluded from coverage under exclusion e outlined in the Policy as these claims directly or indirectly arise out of or result from a sexual act

or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or harassment.

43.     The Negligence/Negligence *Per Se* claim asserted against Armstrong in the Underlying Complaint is further excluded from coverage under exclusion h outlined in the policy as the claims regarding Armstrong's alleged negligent charting or documentation of his examinations of F.I. or W.M. or their sexual histories directly or indirectly arise out of or result from the creation, alteration or modification of F.I. and W.M's medical records not in accordance with medically accepted standards.

44.     The Negligence/Negligence *Per Se* claim asserted against Armstrong in the Underlying Complaint is further excluded from coverage under exclusion j outlined in the Policy as the alleged acts of Armstrong's failure to chart or document the claimants' sexual histories or examinations were committed with his knowledge of the wrongful nature of his actions and because Armstrong's alleged actions were criminal in nature or dishonest.

45.     The Deceit/Negligent Misrepresentation claim asserted against Armstrong in the Underlying Complaint is excluded from coverage under exclusion e outlined in the Policy as these claims directly or indirectly arise out of or result from a sexual act or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or harassment.

46.    The Deceit/Negligent Misrepresentation claim asserted against Armstrong in the Underlying Complaint is further excluded from coverage under exclusion j outlined in the Policy as Armstrong's alleged deceit and misrepresentation were committed by Armstrong with his knowledge of the wrongful nature of his actions and because Armstrong's alleged actions were criminal in nature or dishonest.

47.    The Negligent and Intentional Infliction of Emotional Distress claims asserted against Armstrong in the Underlying Complaint are excluded from coverage under exclusion e outlined in the Policy as these claims directly or indirectly arise out of or result from a sexual act or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or harassment.

48.    The Negligent and Intentional Infliction of Emotional Distress claims asserted against Armstrong in the Underlying Complaint are further excluded from coverage under exclusion j outlined in the Policy as Armstrong's alleged acts were committed by Armstrong with his knowledge of the wrongful nature of his actions and because Armstrong's alleged actions were criminal in nature and/or dishonest.

49.    With specific regard to the actual malice claims asserted against Armstrong in the Underlying Complaint and the corresponding declaration that Armstrong deliberately proceeded to act with conscious or intentional disregard of,

or indifference to, the high probability of harm his actions would cause to F.I. and W.M., the definition of "damages" contained in Section VII does not include either punitive or exemplary damages that may be awarded against Armstrong. Therefore, the limitation in the definition of "damages" as outlined in Section VII of the Policy, precludes coverage for the punitive damage claim asserted against Armstrong in the Underlying Complaint.

**WHEREFORE** JRIC seeks declaratory relief in the following manner:

1) That this Court find and declare that JRIC has no duty to defend Armstrong with respect to claims asserted against him in the Underlying Complaint;

2) That this Court find and declare that JRIC has no duty to indemnify Armstrong for any sums or judgments they may be legally obligated to pay, with respect to claims made against him in the Underlying Complaint;

3) That the Court grant such other and further relief as it may deem just and proper, including attorney's fees, costs, and disbursements incurred by JRIC in this action.

DATED this 31st day of July 2023.

By:   /s/ Kelly J. C. Gallinger
         Kelly J. C. Gallinger
         John R. Knisely
         BROWN LAW FIRM, P.C.
         *Attorneys for Plaintiff James River*
         *Insurance Company*

19